Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRADY COOKSEY,<br><br>    Plaintiff,<br><br>    v.<br><br>CENTERSTATE BANK CORPORATION, ERNEST S. PINNER, CHARLES W. MCPHERSON, JAMES H. BINGHAM, MICHAEL J. BROWN SR., CHARLES DENNIS CARLTON, MICHAEL F. CIFERRI, JOHN C. CORBETT, JODY JEAN DREYER, GRIFFIN A. GREENE, JOHN H. HOLCOMB III, RICHARD MURRAY IV, GEORGE TIERSO NUNEZ, THOMAS E. OAKLEY, G. RUFFNER PAGE JR., WILLIAM KNOX POU JR., DANIEL R. RICHEY, DAVID G. SALYERS, JOSHUA A. SNIVELY SR., and MARK W. THOMPSON,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Grady Cooksey ("Plaintiff"), as trustee for the Grady M. Cooksey Jr. Family Trust, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

1

## NATURE OF THE ACTION

1. This is an action against CenterState Bank Corporation ("CenterState" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of CenterState by South State Corporation ("South State").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of CenterState's common stock.

7. Defendant CenterState operates as a holding company for CenterState Bank, N.A. that provides various consumer and commercial banking services to individuals, businesses, and industries. CenterState operates a correspondent banking and capital markets service division which earns commissions on fixed income security sales, fees from hedging services, loan brokerage fees and consulting fees for services related to these activities. This division maintains offices in New York City. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "CSFL."

8. Defendant Ernest S. Pinner ("Pinner") is Executive Chairman of the Board of the Company.

9. Defendant Charles W. McPherson ("McPherson") is Lead Director of the Company.

10. Defendant James H. Bingham ("Bingham") is a director of the Company.

11. Defendant Michael J. Brown Sr. ("Brown") is a director of the Company.

12. Defendant Charles Dennis Carlton ("Carlton") is a director of the Company.

13. Defendant Michael F. Ciferri ("Ciferri") is a director of the Company.

14. Defendant John C. Corbett ("Corbett") is President, Chief Executive Officer ("CEO"), and a director of the Company.

15. Defendant Jody Jean Dreyer ("Dreyer") is a director of the Company.

16. Defendant Griffin A. Greene ("Greene") is a director of the Company.

17. Defendant John H. Holcomb III ("Holcomb") is a director of the Company.

18. Defendant Richard Murray IV ("Murray") is a director of the Company.

19. Defendant George Tierso Nunez ("Nunez") is a director of the Company.

20. Defendant Thomas E. Oakley ("Oakley") is a director of the Company.

21. Defendant G. Ruffner Page Jr. ("Page") is a director of the Company.

22. Defendant William Knox Pou Jr. ("Pou") is a director of the Company.

23. Defendant Daniel R. Richey ("Richey") is a director of the Company.

24. Defendant David G. Salyers ("Salyers") is a director of the Company.

25. Defendant Joshua A. Snively Sr. ("Snively") is a director of the Company.

26. Defendant Mark W. Thompson ("Thompson") is a director of the Company.

27. Defendants Pinner, McPherson, Bingham, Brown, Carlton, Ciferri, Corbett, Dreyer, Greene, Holcomb, Murray, Nunez, Oakley, Page, Pou, Richey, Salyers, Snively, and Thompson are collectively referred to herein as the "Individual Defendants."

28. Defendants CenterState and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

29. South State operates as a bank holding company for South State Bank that provides a range of retail and commercial banking services, mortgage lending services, trust and wealth management services, and consumer finance loans. South State is incorporated in South Carolina with principal executive offices located in Columbia, South Carolina. South State's common stock trades on the NASDAQ under the ticker symbol, "SSB."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

30. On January 27, 2020, CenterState and South State announced that they had entered

4

into a definitive agreement to combine in an all-stock transaction. Under the terms of the merger agreement, CenterState shareholders would receive 0.3001 shares of South State common stock for each share of CenterState common stock they own. CenterState shareholders would own approximately 53% and South State shareholders would own approximately 47% of the combined company. The press release states, in pertinent part:

### South State and CenterState to Combine in Merger of Equals to Create Leading Southeast Regional Bank

*Combined Company Positioned to be a High Performance Financial Institution with Approximately $34 Billion in Assets Serving 18 High Growth Markets in six Southeastern States*

*Merger Creates the 8th Largest Bank Headquartered in the Southeast*

*Financially Compelling Combination for Both Companies' Shareholders*

*Combines Two Low-Cost Deposit Bases with Over One Million Customers and a Well Positioned Branch Network from Florida through Virginia*

January 27, 2020 07:30 AM Eastern Standard Time

WINTER HAVEN, Fla. & COLUMBIA, S.C.--(BUSINESS WIRE)--CenterState Bank Corporation (NASDAQ: CSFL) ("CenterState"), the parent company of CenterState Bank, and South State Corporation (NASDAQ: SSB) ("South State"), the parent company of South State Bank, jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals with a total market value of approximately $6 billion to create a leading Southeastern-based regional bank.

Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, CenterState shareholders will receive 0.3001 shares of South State common stock for each share of CenterState common stock they own. CenterState shareholders will own approximately 53% and South State shareholders will own approximately 47% of the combined company.

The combined company will operate under the South State Bank name and will trade under the South State ticker symbol SSB on the Nasdaq stock market. The company will be headquartered in Winter Haven, Florida and will maintain a significant presence in Columbia and Charleston, South Carolina; Charlotte, North Carolina; and Atlanta, Georgia.

Robert R. Hill, Jr., CEO of South State, will serve as Executive Chairman of the combined company. John C. Corbett, CEO of CenterState, will be CEO of the combined company. The Board of Directors of the combined company will consist of sixteen directors evenly split between the two legacy companies.

\*   \*   \*

**Financially Attractive Metrics for Shareholders**

- **Significant Earnings Per Share Accretion:** The transaction is projected to deliver in excess of 20% EPS accretion to South State once cost saves are fully phased in, with minimal tangible book value dilution and a TBVPS earnback period of less than one year.
- **Cost Synergies:** The companies have identified $80 million in expected annual net cost savings fully phased in by 2022, representing approximately 10% of projected 2020 combined non-interest expenses.
- **Leading Pro Forma Profitability:** On a pro forma basis, the combined company is expected to deliver robust profitability metrics.

**Executive Leadership**

The merger will combine the executive management teams from both organizations. In addition to Robert Hill, Executive Chairman, and John Corbett, CEO, the executive team of the combined company will include three members from each legacy company.

**Executive Leadership**

The merger will combine the executive management teams from both organizations. In addition to Robert Hill, Executive Chairman, and John Corbett, CEO, the executive team of the combined company will include three members from each legacy company.

| **CenterState Leadership** | **South State Leadership** |
|---|---|
| Will Matthews, Chief Financial Officer | Renee Brooks, Chief Operating Officer |
| Steve Young, Chief Strategy Officer | Greg Lapointe, Chief Banking Officer |
| Richard Murray, President | John Pollok, SEVP & Board Member |

**Approval and Timing**

The merger is expected to close in the third quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Transaction Advisors**

> Piper Sandler & Co. served as financial advisor to South State, with Wachtell, Lipton, Rosen & Katz serving as legal advisor.
>
> Keefe, Bruyette & Woods, *A Stifel Company*, served as financial advisor to CenterState, with Davis Polk & Wardwell LLP serving as legal advisor.

31. On March 16, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

32. The Registration Statement, which recommends that CenterState shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) the sales process leading up to the Proposed Transaction; and (2) the financial analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in connection with its fairness opinion.

33. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) CenterState's Reasons for the Merger; Recommendation of the CenterState Board of Directors; and (iii) Opinion of CenterState's Financial Advisor.

34. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, CenterState shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

   **1. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

35. The Registration Statement omits material information concerning the sales process

leading up to the Proposed Transaction.

36. In August 2019, senior executives at CenterState and South State discussed a potential framework for a merger of equals between the two companies, including ways to approach decisions regarding the name, headquarters, board of directors, and executive leadership of the combined company.

37. On September 19, 2019 the CenterState Board held an annual strategic retreat during which the Board discussed with KBW CenterState's future growth prospects and potential strategic direction. The Board reviewed "various alternatives for creating shareholder value, including organic growth, additional mergers with smaller institutions, a sale of the company and a merger of equals with a company such as South State." The Board encouraged Defendant Corbett to continue discussions with South State and "one other potential merger of equals partner."

38. According to the Registration Statement, "CenterState engaged in high-level discussions with the other potential merger of equals partner but such discussions never progressed beyond the preliminary phase."

39. The Registration Statement, however, fails to disclose with sufficient specificity to what extent discussions with the "other potential merger of equals partner" had progressed.

40. On October 1, 2019, South State and CenterState entered into a mutual confidentiality agreement to facilitate an informed discussion about a potential merger. Subsequently, the parties exchanged non-public financial information.

41. At a regularly scheduled meeting on October 17, 2019, CenterState's Board reviewed preliminary financial aspects of a proposed transaction with South State and "continued to indicate its support for continued focus on a potential merger of equals with South State[.]"

42. During November 2019, senior management of CenterState and South State held a

number of meetings where they discussed transaction "terms relating to the name, headquarters, board of directors and executive leadership of the combined company, as well as the factors and data that should be used for determining the pricing of the potential transaction[.]"

43. On November 22, 2019, South State's board of directors held a special meeting. During the meeting, South State's CEO "indicated that although [South State and CenterState] had discussed generally how pricing had historically been approached in the context of mergers of equals in the banking industry, the discussions to date did not involve specific pricing terms." For some reason the parties had not discussed specific pricing terms despite exchanging non-public financial information, conducting ongoing negotiations with one another for several months, and discussing several other key terms.

44. In December 2019, South State and CenterState continued to engage in discussions regarding a potential transaction. As part of these discussions, the parties discussed the fact that South State and CenterState stocks had begun to trade apart in early November 2019 and continued to do so. Representatives for each party "acknowledged that [an at-market] deal might not be viable if the two stocks continued to trade apart, and any exchange ratio that was ultimately agreed would need to take into account each party's share price level at the relevant time."

45. On December 17, 2019, the South State board of directors held a special meeting to discuss the potential transaction with CenterState. During the meeting, it was noted that "the parties were generally aligned on certain proposed governance terms for the potential transaction, including the name, headquarters, continuing director split and executive leadership of the combined company." It was also noted that negotiations regarding "the exchange ratio and the structure of the bank merger" were ongoing.

46. That same day, CenterState's Board held a special meeting to discuss the potential

9

transaction with South State. The Board was updated concerning "discussions relating to certain proposed governance terms for the potential transaction, including the name, headquarters, continuing director split and executive leadership of the combined company." These proposed governance terms contemplated, among other things, that South State's CEO would serve as Executive Chairman of the combined company and that CenterState's CEO would serve as CEO of the combined company. Further, the Board was made aware of "discussions that had continued between representatives of South State and CenterState since the prior meeting of the CenterState board of directors, including possible exchange ratios and the resulting implied premiums to CenterState's stock price at that time and the structure of the merger." Following discussion, the Board "directed CenterState management to continue to move forward with the negotiation of the potential transaction."

47. The Registration Statement, however, fails to disclose the possible exchange ratios and resulting implied premiums for CenterState's stock that were discussed at those relevant times.

48. Also, as provided in the Registration Statement, in "December 2019, a novel strain of coronavirus, COVID-19, was reported in Wuhan, China . . . [and] has since spread rapidly to other countries, including the United States." As the Company now acknowledges, the coronavirus may adversely impact South State and CenterState businesses. The combined company's financial condition may be adversely affected by COVID-19 if "South State or CenterState is unable to recover from a business disruption on a timely basis[.]" Further, the Company concedes that the "coronavirus outbreak could also delay, increase the costs of, or otherwise adversely affect, the integration of the businesses of the two companies following the completion of the merger and make it more difficult for the combined company to realize anticipated synergies and cost savings in the amounts estimated or in the time frame contemplated or at all[.]"

49. During the "first few weeks of January 2020," South State and CenterState management "had several conversations regarding the terms of the potential transaction, including with respect to the calculation of the exchange ratio, and the timing for announcing the potential transaction."

50. The Registration Statement, however, fails to disclose the possible exchange ratios and resulting implied premiums for CenterState's stock that were discussed at those relevant times.

51. Then, on January 16, 2020, CenterState held a Board meeting. At the meeting, KBW presented that "CenterState would own approximately 53% of the resulting company" in connection with the Proposed Transaction. The Board discussed the divergence in stock price of CenterState and South State, with "management presenting a range of exchange ratios that would give CenterState shareholders a premium to its stock price to facilitate the transaction, noting the general agreement between the parties on pricing." The Board discussed "the proposed management structure, headquarters, and name as well as merger structure, and the need to retain key leaders in order for the transaction to be successful." The Board directed management to move forward with finalizing the terms of the transaction over the next week, with the goal of agreeing on a final exchange ratio after market close on Friday, January 24, 2020.

52. On January 21, 2020, the South State board held a meeting where it "was noted that, following recent discussions and based on the relative movements in each party's share price over the preceding weeks, there was general alignment on pricing, with the exchange ratio to be calculated after market close on Friday, January 24 based on an agreed calculation methodology and approximate implied premium to CenterState's closing share price, subject to any significant changes in either party's share price over the remainder of the week."

53. The Registration Statement, however, fails to disclose the agreed upon calculation

11

methodology and approximate implied premium to CenterState's closing share price.

54. On January 24, 2020, the CenterState Board held a meeting. At the meeting, CenterState's CEO "provided an update on the terms of the potential transaction, including the proposed exchange ratio of 0.3001 shares of South State common stock per share of CenterState common stock based on final negotiations earlier that day." The Board unanimously adopted and approved the merger agreement.

55. The Registration Statement, however, fails to disclose with sufficient specificity the discussions between CenterState and South State leading up to their agreement on the proposed exchange ratio.

56. Since January 24, 2020 (the date the exchange ratio was calculated), CenterState's stock has fallen $8.18 per share or over 35% to close at $15.15 on April 3, 2020.[1]

57. Discussions between CenterState and South State leading up to and concerning the possible exchange ratios and resulting implied premiums, as well as discussions concerning the parties' agreement thereto, are material and must be disclosed: (i) given the Registration Statement's characterization of the exchange ratio as a peripheral term to be decided after several governance terms had been discussed at length, including the name, headquarters, board composition and executive leadership of the combined company;[2] (ii) to shed light on whether the

---

[1] By comparison, over this same period, the Nasdaq composite index has only fallen 1,941.83 points or 20.8% to close at 7,373.08 on April 3, 2020. Since January 24, 2020, South State's stock has fallen $34.75 per share or 40.6% to close at $50.77 per share on April 3, 2020. Meanwhile, the merger consideration exchange ratio of 0.3001 shares of South State common stock for each share of Centerstate common stock "is fixed and will not be adjusted for changes in the market price of either South State common stock or CenterState common stock."

[2] The Registration Statement provides that the board of the combined company will consist of eight (8) legacy CenterState directors, including Defendant Corbett (the CEO of CenterState as

proposed merger consideration—a key factor weighing on a reasonable shareholder's decision to approve or reject a merger—is fair and was the product of arm's length negotiations; (iii) given that the Proposed Transaction was negotiated during the COVID-19 outbreak and the Company's acknowledgment that this outbreak can "adversely affect . . . the integration of the businesses of the two companies following the completion of the merger and make it more difficult for the combined company to realize anticipated synergies and cost savings in the amounts estimated or in the time frame contemplated or at all"; and (iv) given the sharp decline in CenterState's stock price since the announcement of the Proposed Transaction.

58. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to CenterState shareholders.

### 2. Material Omissions Concerning KBW's Financial Analyses

59. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by KBW.

60. The Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by KBW in its "*South State and CenterState Selected Companies Analysis*[,]" "*Pro Forma Selected Companies Analysis*[,]" and "*Selected Transactions Analysis*[.]"

61. The Registration Statement fails to disclose the following concerning KBW's "*Financial Impact Analysis*": (1) closing balance sheet estimates as of June 30, 2020 for South State and CenterState; (2) the pro forma assumptions provided by South State and CenterState managements; (3) the extent to which the Proposed Transaction could be accretive to South State's

---

immediately prior to the effective time), Defendant McPherson, and Defendant Pinner. Further, as of the effective time, "John C. Corbett will serve as the Chief Executive Officer of the combined company and the President and Chief Executive Officer of the combined bank[.]"

estimated 2020 EPS, estimated 2021 EPS and estimated 2022 EPS and could be dilutive to South State's estimated tangible book value per share as of June 30, 2020; and (4) the extent to which the Proposed Transaction could be accretive relative to CenterState's estimated 2022 EPS.

62. The Registration Statement fails to disclose the following concerning KBW's "*South State Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.0% to 11.0%, and (ii) range of 11.0x to 15.0x South State's estimated 2025 earnings; (2) the estimated excess cash flows that South State could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone company and all underlying line items thereto; (3) the terminal value of South State; and (4) the basis for KBW's assumption that South State would maintain a tangible common equity to tangible asset ratio of 8.00% and would retain sufficient earnings to maintain that level.

63. The Registration Statement fails to disclose the following concerning KBW's "*CenterState Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.0% to 11.0%, and (ii) range of 11.0x to 15.0x CenterState's estimated 2025 earnings; (2) the estimated excess cash flows that CenterState could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone company and all underlying line items thereto; (3) the terminal value of CenterState; and (4) the basis for KBW's assumption that CenterState would maintain a tangible common equity to tangible asset ratio of 8.00% and would retain sufficient earnings to maintain that level.

64. The Registration Statement fails to disclose the following concerning KBW's "*Pro Forma Combined Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 6.5% to 10.5%, and (ii) range of 11.0x to 15.0x the pro forma combined entity's estimated 2025 earnings; (2) the estimated excess cash flows that the

pro forma combined entity could generate over the period from July 1, 2020 through December 31, 2024 and all underlying line items thereto; (3) the terminal value of the pro forma combined entity; (4) the basis for KBW's assumption that the pro forma combined entity would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level; and (5) the pro forma combined entity's estimated 2025 earnings.

65. The Board, in consultation with the Company's financial advisors, considered "each of CenterState's, South State's and the combined company's business, operations, financial condition, asset quality, earnings, and prospects" in reaching its decision to recommend to shareholders to approve the Proposed Transaction. Yet the Registration Statement fails to disclose CenterState's, South State's, and the pro forma combined company's estimated excess cash flows that were utilized by KBW in its financial analyses and in rendering its fairness opinion.[3] This information must be disclosed.

66. The valuation methods, underlying assumptions, and key inputs used by KBW in rendering its purported fairness opinion must be fairly disclosed to CenterState shareholders. The description of KBW's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, CenterState shareholders are unable to fully understand KBW's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to CenterState shareholders.

---

[3] The Registration Statement also provides that the Board considered "that the merger would create synergies and potential enhanced economies of scale that would result in the combined company having the opportunity to have superior future earnings and prospects compared to CenterState's earnings and prospects on a stand-alone basis[.]"

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

67. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

69. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

70. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

71. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

72. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

73. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

75. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

76. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

77. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

78. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 6, 2020                          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*